# EXHIBIT 1

Hearing Date: 11/19/2021 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
　　　　Cook County, IL

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

FILED
7/22/2021 3:55 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03593

14154064

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

ALEXANDER CLARKE, individually and
on behalf of all others similarly situated,

          Plaintiff,

v.

LEMONADE INC.,

          Defendant.

Case no. **2021CH03593**

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiff Alexander Clarke ("Plaintiff"), individually and on behalf of a Class of all other persons similarly situated defined below, by and through his attorneys, brings this Class Action Complaint ("Complaint") pursuant to 735 ILCS 5/2-801 against Lemonade Inc. ("Lemonade" or "Defendant"). Plaintiff alleges the following based upon personal knowledge as to himself and his own actions, and, as to all other matters, alleges, upon information and belief and investigation of his counsel, as follows:

### NATURE OF THE ACTION

1.    This action seeks damages and injunctive relief arising out of Defendant's violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"). BIPA prohibits, among other things, private entities from collecting, capturing, obtaining, disclosing, redisclosing, disseminating or profiting from the biometric identifiers or information of an individual without providing written notice and without obtaining a written release from the impacted individual or his or her authorized representative. BIPA also requires private entities in

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

possession of biometric identifiers to adopt retention and destruction policies and to take measures to prevent the release of that information.

2.     Lemonade is an insurance company based in New York offering homeowners and renters insurance in the United States.  The company uses artificial intelligence and behavioral economics, to replace brokers and bureaucracy with bots and machine learning. According to Lemonade's securities filing, customers seeking renters or homeowners insurance can have a two-minute chat with its bot, AI Maya, while claims can be filed by chatting with another bot, AI Jim, who pays claims in as little as ***three seconds.*** [1]

3.     Lemonade states that its mission is to harness technology and social impact to be the world's most loved insurance company.  It further represents that its data architecture melds artificial intelligence with the human kind and learns from the prodigious data it generates to become ever better at delighting customers and quantifying risk.[2]  Lemonade touts its fast processing of claims through the use of artificial intelligence.

4.     Lemonade recently admitted that it collects and analyzes users' information, including video information which the Company claims to utilize in connection with its claims handling process.  In now-deleted tweets and blog posts, the Company represented, among other things, that its AI analyzes the videos that users submit when they file insurance claims for signs of fraud, picking up "non-verbal cues that traditional insurers can't, since they don't use a digital claims process."

---

[1] Chen, I-Chun (June 25, 2020). *"Lemonade, insurer that uses bots to replace brokers, plans $286M IPO". American City Business Journals*. https://www.bizjournals.com/newyork/news/2020/06/25/lemonade-insurer-that-uses-bots-plans-ipo.html

[2] *Id.*

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

**Lemonade** ✔ @Lemonade_Inc · May 24 · · ·

Lemonade is built on a digital substrate - we use bots and machine learning to make insurance instant, seamless, and delightful.

This puts us at a data advantage—in fact, we collect about 100X more data than traditional insurance carriers. Here's why that matters 👇 (1/7)



○ 135        ↑↓ 434        ♡ 290        ⬆

**Lemonade** ✔ @Lemonade_Inc · May 24 · · ·

A typical homeowners policy form has 20–40 fields (name, address, bday...), so traditional insurers collect 20-40 data points per user.

AI Maya asks just 13 Q's but collects over 1,600 data points, producing nuanced profiles of our users and remarkably predictive insights. (2/7)

○ 15        ↑↓ 45        ♡ 32        ⬆

**Lemonade** ✔ @Lemonade_Inc · May 24 · · ·

This data helps us understand the level of risk each customer brings, which improves our underwriting, customer acquisition, and fraud detection. (3/7)

○ 4        ↑↓ 20        ♡ 32        ⬆

@Lemonade_Inc

Replying to @Lemonade_Inc

For example, when a user files a claim, they record a video on their phone and explain what happened.

Our AI carefully analyzes these videos for signs of fraud. It can pick up non-verbal cues that traditional insurers can't, since they don't use a digital claims process. (4/7)

12:38 PM · May 24, 2021 · Twitter Web App

3

FILED DATE: 7/22/2021 3:55 PM   2021CH03593



5.      In response to the tweets and blog posts, Lemonade issued the following statement on its website:

> ***We have never, and will never, let AI auto-reject claims.*** Here's why: We do not believe that it is possible, nor is it ethical (or legal), to deduce anything about a person's character, quality, or fraudulent intentions based on facial features, accents, emotions, skin-tone, or any other personal attribute.[3]

6.      Notably, Lemonade did not deny its collection and use of biometric information for its artificial intelligence, in fact it is something that it prides its company on. Lemonade merely states that artificial intelligence is not involved in the auto-rejection of claims.

7.      Plaintiff alleges that Defendant's collection, storage, use and dissemination of its users' sensitive information is a violation of BIPA.

8.      The State of Illinois General Assembly noted in passing BIPA that: "[b]iometrics are unlike other unique  identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no

---

[3] https://www.lemonade.com/blog/lemonades-claim-automation/

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."

9.      Plaintiff brings this action against Lemonade for their collection and use of Plaintiff's and Class' biometric identifiers and biometric information in violation of BIPA, including their facial geometry via videos it required its customers to upload via its mobile application (the "App").

10.      Plaintiff seeks damages and injunctive relief resulting from Defendant's actions in collecting and using biometric information and Lemonade's failure to obtain prior, informed written consent in direct violation of BIPA.

## PARTIES

11.      Plaintiff Alexander Clarke is a citizen and resident of Illinois. Plaintiff obtained pet and renters insurance through Lemonade, and submitted a video that included his biometric information to Defendant in support of his claim for losses under his renters insurance policy.

12.      Defendant Lemonade Inc. is Delaware corporation with its principle executive offices located at 5 Crosby Street, 3rd Floor New York, New York 10013.  Lemonade is a fully licensed and regulated insurance company which underwrites, prices, and sells various insurance policies.  Lemonade is incorporated in the State of Delaware and has its principal place of business in New York, New York.  Lemonade is a public company traded under the ticker symbol LMND.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction over this lawsuit as the Illinois Constitution gives trial courts subject matter jurisdiction over all justiciable matters.

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

14.     This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States because Defendant Lemonade—a publicly-traded company incorporated in Delaware with its principal executive offices located in New York—does substantial business in the State of Illinois.

15.     Moreover, the exercise of personal jurisdiction over Lemonade is appropriate because it collected, stored, and used biometric information and identifiers from Illinois residents who used the Lemonade App in violation of BPIA.

16.     Furthermore, many of the biometric markers and images Lemonade collected, used and stored were created in Illinois, uploaded from Illinois and/or managed via Illinois citizens' user accounts, computers, and mobile devices.

17.     This Court has personal jurisdiction over Defendant because Lemonade used and disseminated data derived directly from Illinois-based users and exposed residents of Illinois to ongoing privacy risks within Illinois based on the collection, capture, obtainment, disclosure, redisclosure and dissemination of their biometric identifiers and information. Furthermore, many of the images Defendant used for their unlawful collection, capture and obtainment of biometric identifiers and information were created in Illinois, uploaded from Illinois, and/or managed via Illinois-based user accounts, computers, and mobile devices.  Because of the scope and magnitude of Defendant's conduct, Defendant knew that their collection, capture, obtainment, disclosure, redisclosure and dissemination of impacted individuals' biometric identifiers and information would injure Illinois residents and citizens. Defendant knew or had reason to know that collecting, capturing, obtaining, disclosing, redisclosing and disseminating Illinois citizens' and residents' biometric identifiers and information without providing the requisite notice or obtaining the requisite releases would deprive Illinois citizens and residents of their statutorily-protected privacy

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

rights, neutralize Illinois citizens' and residents' ability to control access to their biometric identifiers and information via their Illinois-managed devices and exposed residents in Illinois to potential surveillance and other privacy harms as they went about their lives within the state.

18.     Because of the scope and magnitude of its conduct, Lemonade knew that its collection, storage, use, disclosure and dissemination of impacted individuals' biometric identifiers and information would injure Illinois residents and citizens.

19.     Lemonade knew or had reason to know that collecting, storing, using, disclosing and disseminating Illinois citizens' and residents' biometric identifiers and information without providing the requisite notice or obtaining the requisite consent would deprive Illinois citizens and residents of their statutorily-protected privacy rights, neutralize Illinois citizens' and residents' ability to control access to their biometric identifiers and information via the devices they managed from Illinois and expose Illinois' residents to potential surveillance and other privacy harms as they went about their lives within the State.

20.     Venue is proper in this County pursuant to 735 ILCS 5/2-102(a) because Defendant conducts business in Cook County, and many of the acts complained about herein occurred in Cook County.

## FACTUAL BACKGROUND

### I.     Illinois' Biometric Information Privacy Act

21.     BIPA seeks to safeguard individuals' biometric identifiers and information.

22.     Biometric identifiers include a scan of an individual's face geometry or voiceprint. 740 ILCS § 14/10.

23.     Biometric information is "any information . . . based on an individual's biometric identifier used to identify an individual."  740 ILCS § 14/10.

7

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

24.    In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

25.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

26.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

27.    Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

28.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.   Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

    b.   Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.   Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

29.     Biometric identifiers include retina and iris scans, fingerprints and handprints, and – most importantly here – facial geometry and voiceprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

30.     BIPA establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

31.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

32.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

33.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

34.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

35.     In direct violation of each of the foregoing provisions of §§15(a) and 15(b) of BIPA, Lemonade collected, stored, and used—without first providing notice, obtaining informed written consent or publishing data retention policies—the biometrics and associated personally identifying information of Plaintiff and the Class who are Illinois residents who used Lemonade's App to apply for insurance and upload videos in order to have their insurance claims processed.

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

## II.    Lemonade Collects, Stores and Uses Illinois' Residents' Protected Biometric Information and Identifiers

36.     Defendant Lemonade is a fast-growing, publicly traded insurance company that prides itself on its pioneering use of artificial intelligence ("AI") and other technologies to intake and to process insurance claims.[4]

37.     Based in and originally launched in New York, Lemonade uses an AI-powered app that offers homeowners, renters, pet and life insurance policies.

38.     Lemonade began writing policies in the State of Illinois in or about April of 2017.

39.     Lemonade represented in its annual letter to shareholders that at the end of 2020, Lemonade had in excess of 1,000,000 customers in the United States.[5]   Lemonade's Chief Operating Officer boasted:

> With every new customer, our system grows smarter, our underwriting process gets better, and our prices become more accurate and fair.  **At Lemonade, one million customers translates into billions of data points, which feed our AI at an ever growing speed.  Quantity generates quality.**[6]

40.     One of the ways that Lemonade is able to collect so much of its customers' biometric and other information is by using its APP to collect and to maintain vast troves of customer information, including biometric information.

---

[4]     *See* https://www.vox.com/recode/22455140/lemonade-insurance-ai-twitter (last visited July 21, 2021).

[5]     https://s24.q4cdn.com/139015699/files/doc_downloads/2021/Q4-2020-LMND-Shareholder-Letter_vF.pdf (last visited July 21, 2021)

[6]     *See* https://finance.yahoo.com/news/lemonade-ends-2020-over-one-134600018.html (last visited July 21 2021) (emphasis added).

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

41.     Lemonade is unique in the insurance industry in that its customers (its policy holders) are required, in connection with their claims submission, to upload a video message describing what happened and the facts upon which their claim is based.[7]

42.     Notably, the video is not essential or even necessary to the claim submission, which is completed via a "chat-bot" in the App.  Rather, Lemonade requires its customers to provide a video of themselves through the App in order to acquire thousands and thousands of "bits" of data so that Lemonade can then decide whether to honor a given claim and how to price its insurance products.

43.     Lemonade admitted in a series of tweets and blogs that its AI analyzes videos of customers when determining if their claims are fraudulent.[8]

44.     Lemonade announced that its customer service chatbots collect as many as 1,600 data points from a single video of a customer answering questions regarding their claim:

---

[7]     *See* https://frankonfraud.com/fraud-trends/lemonade-under-fire-for-using-ai-to-stop-insurance-fraud/#:~:text=Lemonade%2C%20(not%20the%20drink),claims%20if%20they%20suspect%20fraud (last visited July 15, 2021).

[8]     https://www.vox.com/recode/22455140/lemonade-insurance-ai-twitter (last visited July 15, 2021).

FILED DATE: 7/22/2021 3:55 PM   2021CH03593



45.     Lemonade's twitter thread "implied that [it] was able to detect whether a person was lying in their video and could thus decline insurance claims if its AI believed a person was lying."[9]

46.     Lemonade has boasted that it collects "100X more data than traditional insurance carriers."[10]

47.     Lemonade later attempted to clarify its tweet and blog postings, explaining that "[t]he term, non-verbal cues was a bad choice of words to describe **the facial recognition technology we're using** to flag claims submitted by the same person under different identities. These flagged claims then get reviewed by our human investigators."[11]

---

[9]     https://frankonfraud.com/fraud-trends/lemonade-under-fire-for-using-ai-to-stop-insurance-fraud/.

[10]    https://www.vox.com/recode/22455140/lemonade-insurance-ai-twitter.

[11]    https://www.lemonade.com/blog/lemonades-claim-automation/ (last visited July 15, 2021) (emphasis added).

13

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

48.     Regardless of its clarification, Lemonade did not deny that it collects and uses *facial recognition technology to collect reams of data, including biometric data like face geometry, from its customers, including those in the State of Illinois.*

49.     In a post authored by its Chief Executive Officer and shared on its blog, Lemonade stated:

> It's different for companies built on a digital substrate. Lemonade's chatbots do away with forms altogether, making the process fast and fun, but the data implications are still more profound:
>
> **Lemonade collects about 100x more data-points per customer.**
>
> That's the power of an entirely digital experience.[12]

50.     Indeed, as a recent article detailing Lemonade's questionable uses of AI explains, "[t]he in-depth collection of video data and analyzing it against AI tools make it clear that Lemonade must be storing at least some biometric data in order to train models to detect patterns of fraud."[13]

51.     Or, put another way, Lemonade is an insurance company that claims it is replacing human brokers and actuaries with bots and AI in order to streamline the insurance claim process. In the process, however, Lemonade collects tremendous amounts of data, including biometric information, about its customers without telling them in direct violation of BIPA.[14]

52.     For instance, an article published in *Forbes* detailed a situation where Lemonade used facial recognition technology to compare various claims submitted by customers in order to root out fraud:

---

[12]     https://www.lemonade.com/blog/precision-underwriting/ (last visited July 15, 2021) (emphasis in original).

[13]     https://frankonfraud.com/fraud-trends/lemonade-under-fire-for-using-ai-to-stop-insurance-fraud/.

[14]     https://www.vox.com/recode/22455140/lemonade-insurance-ai-twitter.

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

In the summer of 2017, a Los Angeles man in his mid-20s put on a necklace, blond wig and makeup and made a cellphone video describing how his camera and other electronics had been stolen. He submitted the video to his renters insurance provider, Lemonade, which paid the $677 claim in two days. Three months later, dressed in jeans and a T-shirt and using a different name, email address and phone number, the same man submitted a video claim for a stolen $5,000 camera. But this time, the algorithms that are a crucial part of Lemonade's highly automated systems flagged the claim as suspicious. Last year, the persistent fraudster, this time wearing a pink dress, tried again, only to be foiled once more by Lemonade's computers.[15]

53.     Lemonade used its AI, including facial recognition technology, to determine that the claimants in the above scenario were the same person by collecting, storing, and using the immutable biometric information and identifiers of its customers.[16]

54.     In its S-1 form filed with the U.S. Securities and Exchange Commission prior to the company going public—and in forms since—Lemonade states that its proprietary AI algorithms are at the core of its business and that it could not function without them, but admits that they could also lead to profit loss should regulators ever crack down:

> ***Our proprietary artificial intelligence algorithms may not operate properly or as we expect them to,*** which could cause us to write policies we should not write, price those policies inappropriately or overpay claims that are made by our customers, the company wrote in the filing. Moreover, our proprietary artificial intelligence algorithms may lead to unintentional bias and discrimination.[17]

55.     Lemonade did not disclose to its customers the extent to which it was collecting and using their sensitive biometric (and other information).  Indeed, the "instant, seamless, and delightful" insurance experience that Lemonade aggressively markets was built by the collection

---

[15]     https://www.forbes.com/sites/jeffkauflin/2019/05/02/lemonade-fintech-insurance-unicorn/?sh=23c5a7ee6cde (last visited July 15, 2021).

[16]     https://frankonfraud.com/fraud-trends/lemonade-under-fire-for-using-ai-to-stop-insurance-fraud/(stating that "[t]he in-depth collection of video data and analyzing it against AI tools make it clear that Lemonade must be storing at least some biometric data in order to train models to detect patterns of fraud").

[17]     https://www.vice.com/en/article/z3x47y/an-insurance-startup-bragged-it-uses-ai-to-detect-fraud-it-didnt-go-well (emphasis added).

of its customers' own data, including their biometric information, which those customers never realized they were providing.

56.     As noted in a recent article entitled *A disturbing, viral Twitter thread reveals how AI-powered insurance can go wrong, Lemonade tweeted about what it means to be an AI-first insurance company. It left a sour taste in many customers' mouths:*

> It's rare for a company to be so blatant about how that data can be used in its own best interests and at the customer's expense. But rest assured that Lemonade is not the only company doing it.[18]

57.     According to the analytics site, Crunchbase, there were 47,345 downloads of the App in the last thirty days (as of July 13, 2021), representing a nearly 5% increase from the prior thirty-day period.[19]

### III.     Lemonade's Conduct Violates the BIPA.

58.     As detailed above, Lemonade designed and implemented an AI tool in the App that automatically performs facial scans, collecting the facial geometry of customers who use the App.

59.     In collecting, using, storing and otherwise obtaining the biometric identifiers and information of Plaintiff and the Class Members and, upon information and belief, subsequently disclosing, re-disclosing and otherwise disseminating those biometric identifiers and information to other related corporate entities—all without providing the requisite notice, obtaining the requisite written releases or satisfying any of the other provisions that would excuse it from BIPA's mandates—Lemonade violated BIPA.

60.     In further violation of BIPA, Lemonade failed to use a reasonable standard of care to protect Plaintiff's and Class Members' biometric identifiers and information from disclosure.

---

[18]     https://www.vox.com/recode/22455140/lemonade-insurance-ai-twitter.

[19]     https://www.crunchbase.com/organization/lemonade/technology (last visited July 13, 2021).

16

FILED DATE: 7/22/2021 3:55 PM     2021CH03593

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

61.     In further violation of BIPA, as a private entity in possession of Plaintiff's and Class Members' biometric identifiers and information, Lemonade failed to adopt or make available to the public a retention schedule or guidelines for permanently destroying such biometric identifiers and information once the initial purpose for collecting them had or has been satisfied.

62.     Lemonade's violations of BIPA were intentional and reckless or, in the alternative, negligent.

## IV.     Experience of Representative Plaintiff.

63.     Plaintiff, an Illinois resident, has been a Lemonade customer since at least 2018.  In connection with submitting an insurance claim following water damage to his apartment, Plaintiff, as required by Defendant, accessed and used Lemonade's App.

64.     Plaintiff answered numerous questions posed to him by a Lemonade "chat-bot." Lemonade had all the requisite information it needed to process Plaintiff's claim, as well as his contact information in order to follow-up with him if it required additional information.

65.     Nonetheless, Lemonade required Plaintiff to upload a "short video describing the incident."

66.     Plaintiff uploaded a video of himself describing the damage on July 10, 2018. Plaintiff did not know that Lemonade would collect, obtain, store and/or use his biometric identifiers or biometric information.  Plaintiff did not give informed written consent to Lemonade to collect, obtain, store and/or use his biometric identifiers or biometric information, nor was Plaintiff presented with or made aware of any publicly available retention schedule regarding his biometric identifiers or biometric information.

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

67.     Likewise, Lemonade never provided Plaintiff with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage or use of his unique biometric identifiers and/or biometric information.

68.     By collecting, obtaining, storing, and using Plaintiff's unique biometric identifiers and/or biometric information without his consent, written or otherwise, Lemonade invaded Plaintiff's statutorily protected right to privacy in his biometrics.

69.     In direct violation of §§15(b)(2) and 15(b)(3) of BIPA, Lemonade never informed Plaintiff or other Illinois residents who had their biometrics collected of the specific purpose and length of time for which their biometric identifiers or information would be collected, stored, and used, nor did Defendant obtain a written release from these individuals.

70.     In direct violation of § 15(a) of BIPA, Lemonade did not have written, publicly available policies identifying their retention schedules or guidelines for permanently destroying any of these biometric identifiers and/or biometric information.

## CLASS ALLEGATIONS

71.     **Class Definition:** Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of a Class, defined as follows:

> All individuals whose biometric identifiers or biometric information were collected, captured, stored, used, transmitted, received or otherwise obtained and/or disseminated by Lemonade within the State of Illinois within the applicable limitations period (the "Class").

72.     Excluded from the Class are (i) any members of the judiciary assigned to preside over this Matter, as well as their immediate family members, (ii) any officer or director of Defendant and any immediate family members of such officer or director; (iii) any entity in which Defendant have a controlling interest and (iv) any employees and agents of Defendant.

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

73.    Numerosity: Pursuant to 735 ILCS 5/2-801(1), the number of persons within the Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each Member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual Members of the Class render joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, membership in the Class is readily ascertainable and identifiable from Lemonade's records.

74.    Commonality and Predominance: Pursuant to 735 ILCS 5/2-801(2), there are well-defined common questions of fact and law that exist as to all Members of the Class and that predominate over any questions affecting only individual Members of the Class.  These common legal and factual questions, which do not vary from Class Member to Class Member, and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited to, the following:

(a)    whether Defendant collected or otherwise obtained Plaintiff's and the Class Members' biometric identifiers and/or biometric information;

(b)    whether Defendant properly informed Plaintiff and the Class Members that they collected, used, and stored their biometric identifiers and/or biometric information;

(c)    whether Defendant obtained a written release (as defined in 740 ILCS 1410) to collect, use and store Plaintiff's and the Class Members' biometric identifiers and/or biometric information;

(d)    whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(e)    whether Defendant used Plaintiff's and the Class Members' biometric identifiers and/or biometric information to identify them;

(f)    whether Defendant destroyed Plaintiff's and the Class Members' biometric identifiers and/or biometric information once that information

19

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

was no longer needed for the purpose for which it was originally collected; and

(g)   whether Defendant's violations of BIPA were committed intentionally, recklessly or negligently.

75.   Adequate Representation: Pursuant to 735 ILCS 5/2-801(3), Plaintiff has retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent Members of the Class. Plaintiff has raised viable statutory claims, or the type reasonably expected to be raised by Members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate and/or to amend the Class definition.

76.   Superiority: Pursuant to 735 ILCS 5/2-801(4), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if every Member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent ,or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights

of each Member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

**COUNT I – FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15(a) – FAILURE TO INSTITUTE, MAINTAIN AND**
**ADHERE TO PUBLICLY AVAILABLE RETENTION SCHEDULE**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

79.     Defendant failed to comply with these BIPA mandates.

80.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

81.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry and/or voiceprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

82.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

83.     Defendant failed to publish a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

84.     Upon information and belief, Defendant lacks a retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

destroy Plaintiff's or the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the app.

85.     On behalf of themselves and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### COUNT II – FOR DAMAGES AGAINST DEFENDANT
### VIOLATION OF 740 ILCS 14/15(b) – FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION

86.     Plaintiff incorporates the foregoing allegations as if fully set forth herein

87.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS § 14/15(b) (emphasis added).

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

88. Defendant failed to comply with these BIPA mandates.

89. Defendant is a "private entity" under BIPA. *See* 740 ILCS § 14/10.

90. Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry and/or voiceprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

91. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

92. Defendant systematically and automatically collected, used, stored and disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

93. Defendant did not inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used and disseminated, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated as required by 740 ILCS § 14/15(b)(1)-(2).

94. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq*.

95. On behalf of themselves and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

$5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### COUNT III – FOR DAMAGES AGAINST DEFENDANT VIOLATION OF
### 740 ILCS 14/15(d): Disclosure of Biometric Identifiers and Information
### Before Obtaining Consent

96.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

97.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS § 14/15(d)(1).

98.     Defendant failed to comply with this BIPA mandate.

99.     Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

100.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry and/or voiceprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

101.    Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

102.    Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS § 14/15(d)(1).

103.    By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

104.    On behalf of themselves and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully request that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as Class representatives and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant's actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.    Declaring that Defendant's actions, as set forth above, were intentional and/or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

F.      Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.      Awarding all such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

Date:   July 22, 2021                              Respectfully Submitted,

*/s/ Katrina Carroll*
Katrina Carroll
**CARLSON LYNCH, LLP**
Kyle A. Shamberg
Nicholas R. Lange
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@carlsonlynch.com
kshamberg@ carlsonlynch.com
nlange@carlsonlynch.com


Gary F. Lynch*
Kelly K. Iverson*
Jamisen A. Etzel*
Nicholas A. Colella*
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
glynch@carlsonlynch.com
kiverson@carlsonlynch.com
jetzel@carlsonlynch.com
ncolella@carlsonlynch.com

Joseph P. Guglielmo*
Erin Green Comite*
Joseph A. Pettigrew*
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
jpettigrew@scott-scott.com

*Attorneys for Plaintiff*

* = pro hac vice forthcoming

Hearing Date: 11/19/2021 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
    Cook County, IL

FILED
7/22/2021 3:55 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03593

14154064

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **Summons - Alias Summons** | **(08/01/18) CCG 0001 A** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Alexander Clarke
_____
               (Name all parties)
       v.
Lemonade Inc.
_____

Case No. **2021CH03593**
_____

**SUMMONS** ☑      ☐ **ALIAS SUMMONS**

To each Defendant:   C/O MWE Corporate Services, LLC

1007 North Orange Street, 10th Floor
Wilmington, DE 19801

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

FILED DATE: 7/22/2021 3:55 PM  2021CH03593

**Summons - Alias Summons** (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 63746

Atty Name: Katrina Carroll

Atty. for: Plaintiff

Address: 111 W. Washington Street, Suite 1240

City: Chicago

State: IL Zip: 60602

Telephone: (312) 750-1265

Primary Email: KCarroll@CarlsonLynch.com

Witness: 7/22/2021 3:55 PM IRIS Y. MARTINEZ

DOROTHY BROWN, Clerk of Court

Date of Service:
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 7/22/2021 3:55 PM 2021CH03593

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Hearing Date: 8/2/2021 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED DATE: 7/23/2021 4:55 PM   2021CH03593

FILED
7/23/2021 4:55 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03593

14171777

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ALEXANDER CLARKE, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

LEMONADE INC.,

    Defendant.

Case No. 2021-CH-03593

Hon. Allen P. Walker

**JURY TRIAL DEMANDED**

## NOTICE OF MOTION

To: Lemonade Inc.
  C/O MWE Corporate Services, LLC
  1007 N. Orange Street, 10th Floor
  Wilmington, DE 19801

           08/02/       9:30
  You are hereby notified that on _____, 2021 at _____a.m. [PLEASE SEE DATE STAMPED ABOVE BY COURT] or as soon thereafter as counsel may be heard, I shall appear remotely before the presiding Judge Allen P. Walker, in courtroom 2402 or a virtual courtroom that is to be determined, or any other judge as may be holding court in his/her absence, and then and there move for hearing on the attached **Plaintiff's Motion for Class Certification** at which time and place you may appear as you see fit to do.

Date: July 23, 2021

          Respectfully Submitted,

          */s/ Katrina Carroll*
          Katrina Carroll
          **CARLSON LYNCH, LLP**
          Kyle A. Shamberg
          Nicholas R. Lange
          111 W. Washington Street, Suite 1240
          Chicago, IL 60602
          Telephone: (312) 750-1265
          kcarroll@carlsonlynch.com
          *kshamberg@ carlsonlynch.com*
          *nlange@carlsonlynch.com*
          Firm ID: 63746

          Gary F. Lynch*
          Kelly K. Iverson*
          Jamisen A. Etzel*

FILED DATE: 7/23/2021 4:55 PM    2021CH03593

Nicholas A. Colella*
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
glynch@carlsonlynch.com
kiverson@carlsonlynch.com
jetzel@carlsonlynch.com
ncolella@carlsonlynch.com

Joseph P. Guglielmo*
Erin Green Comite*
Joseph A. Pettigrew*
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
jpettigrew@scott-scott.com

*Attorneys for Plaintiff*

* = pro hac vice forthcoming

FILED DATE: 7/23/2021 4:55 PM   2021CH03593

## **PROOF OF SERVICE**

The undersigned certifies that she will cause a true and correct copy of the foregoing and within to be served on the above parties via US mail, with postage prepaid, at the address appearing above on July 26, 2021.

*/s/ Katrina Carroll*
Katrina Carroll

FILED DATE: 7/22/2021 3:55 PM    2021CH03593

FILED
7/22/2021 3:55 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH03593

14154064

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ALEXANDER CLARKE, individually and
on behalf of all others similarly situated,

            Plaintiff,                          Case no. 2021CH03593

v.

LEMONADE INC.,

            Defendant.

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
## PURSUANT TO 735 ILCS 5/2-801, *et seq.*[1]

Plaintiff Alexander Clarke ("Plaintiff"), individually and on behalf of all others similarly

situated, through undersigned counsel, moves the Court pursuant to 735 ILCS 5/2-801, *et seq.*, to

certify the following Class as defined in Plaintiff's complaint against Defendant Lemonade, Inc.

("Lemonade" or "Defendant"):

> All individuals whose biometric identifiers or biometric information were
> collected, captured, stored, used, transmitted, received, or otherwise obtained
> and/or disseminated by Lemonade within the State of Illinois within the applicable
> limitations period (the "Class").

Plaintiff respectfully reserves the right to amend the definition of the Class above if

discovery or further investigation reveals that the Class should be expanded or otherwise modified.

---

[1] Plaintiff requests that the Court delay its ruling on this motion until the parties have had an opportunity to
complete the discovery process and fully brief this issue. Plaintiff is filing this motion in light of the Illinois
Supreme Court's opinion in *Ballard RN Ctr., Inc. v. Kohll's Pharm. & Homecare, Inc.*, 2015 IL 118644
(Ill. 2015). In *Ballard RN Ctr.*, the Illinois Supreme Court found that a motion for class certification which
"identified [the] defendant, the applicable date or dates, and the general outline of plaintiff's class action
allegations" was sufficient to overcome mootness by a defendant to defeat the case in question. *Id.* at *19.

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

In support of his motion, Plaintiff states as follows:

## I.    Introduction

The policy objective behind class actions is to encourage individuals, who may otherwise lack an incentive to file individual actions because their damages are limited, to join with others to vindicate their rights in a single action. *Hansberry v. Lee*, 311 U.S. 32 (1940).

For a suit to proceed as a class action in Illinois, the circuit court must find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact *or* law common to the class, which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interests of the class; and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (emphasis added).  In considering class certification, the Court assigns the burden of satisfying the four requirements of section 2-801 to the plaintiff (*Wheatley v. Board of Ed. of District 205*, 99 Ill. 2d 481, 486 (1984)), but does not consider the possibility of success on the underlying merits of the claims asserted. *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1075 (1988).

## II.    The Class Is Sufficiently Numerous.

Section 801(1) requires not only that the number of plaintiffs be numerous, but also that joinder of plaintiffs in one individual action be impractical. 735 ILCS 5/2-801(1).  Where there are a number of potential claimants, and the individual amount claimed by each is small, making redress on an individual level difficult, if not impossible, Illinois courts have been particularly

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

receptive to proceeding on a class action basis. *Miner v. Gillette Co.,* 87 Ill. 2d 7 (1981).

The number of persons affected by Defendant's unlawful activities are sufficiently numerous to make joinder of all such purchasers into one individual action impractical. The number of persons within the class is substantial, believed to amount to at least many thousands. It is, therefore, impractical to join each member of the Class as named plaintiffs. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, membership in the Class is readily ascertainable and identifiable from Lemonade's records. The requirements for certification of a class action under section 2-801(1) will be satisfied.

### III.  The Claims Presented by the Class Raise Common Issues of Fact and Law.

Section 801(2) requires "questions of fact or law common to the class." 735 ILCS 5/2-801(2). However, "[c]ertification require[s] only that there be either a predominating common issue of law or fact, not both." *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 81 (1994). "A class action can properly be prosecuted where a defendant is alleged to have acted wrongfully in the same basic manner as to the entire class." *Gordon v. Boden*, 224 Ill. App. 3d 195, 201 (1st Dist. 1991) (quoting *Brooks v. Midas-International Corp.*, 47 Ill. App. 3d 266 (1977)). Said differently, a common question may be shown when class members are aggrieved by the same or similar conduct (*Miner*, 87 Ill. 2d at 19), or a pattern of conduct. *Purcell*, 175 Ill. App. 3d at 1077. Satisfaction of the prerequisite pertaining to predominating common questions of fact or law necessitates a showing that successful adjudication of the purported class representative's individual claims will establish a right of recovery or resolve a central issue on behalf of the class members. *Society of St. Francis v. Dulman*, 98 Ill. App. 3d 16, 18 (1981).

The common questions of fact or law existing in the present case include – but certainly

are not limited to:

FILED DATE: 7/22/2021 3:55 PM 2021CH03593

    (a)    whether Defendant collected or otherwise obtained Plaintiff's and the Class Members' biometric identifiers and/or biometric information (collectively, "Biometrics");

    (b)    whether Defendant properly informed Plaintiff and the Class Members that they collected, used, and stored their biometric identifiers and/or biometric information;

    (c)    whether Defendant obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiff's and the Class Members' biometric identifiers and/or biometric information;

    (d)    whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

    (e)    whether Defendant used Plaintiff's and the Class Members' biometric identifiers and/or biometric information to identify them;

    (f)    whether Defendant destroyed Plaintiff's and the Class Members' biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected; and

    (g)    whether Defendant's violations of the Biometric Information Protection Act ("BIPA") were committed intentionally, recklessly, or negligently.

The factor of predominance is easily met in this case. All potential Class members were subject to the same misconduct (Defendant's unlawful collection of their Biometrics) in

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

contravention of the same laws.

## IV.     The Named Plaintiff Adequately Represents the Interests of the Class.

The named Plaintiff must fairly and adequately protect the interest of the class.  This is not a difficult burden to bear, and it is borne in this case.

"The purpose of adequate representation is merely to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Clark v. TAP Pharm. Prods. Inc. et al.*, 343 Ill. App. 3d 538, 550 (5th Dist. 2003) (internal quotation omitted).  "The plaintiff class representative need only have a marginal familiarity with the facts of his case and does not need to understand the legal theories upon which his case is based to a greater extent." *Id.* at 550-51 (internal quotations and alterations omitted).  The named Plaintiff, being the victim of Defendant's unlawful conduct, is familiar with the pertinent facts of the case.

Additionally, Plaintiff's counsel are "qualified, experienced, and generally able to conduct the proposed litigation." *Steinberg v. Chi. Medical Sch.*, 69 Ill. 2d 320, 339 (1977); *see also Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 309 (N.D. Ill. 1995).  Class counsel in this matter are highly experienced in prosecuting complex litigation, including class actions.

## V.     The Class Action Procedure Is the Appropriate Method for the Fair and Efficient Adjudication of the Controversy.

The class action procedure is the appropriate method for the fair and efficient adjudication of the controversy.  The *Steinberg* Court held that the satisfaction of the first three prerequisites makes manifest that the final requirement of the statute is fulfilled. *Steinberg*, 69 Ill. 2d at 337-38.

Since the nature of Plaintiff's and Class Members' claims are similar and the common claims share the same factual and/or legal foundation, the class action mechanism is a superior method for resolving this case.  Class certification ensures uniformity in resolving the same and

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

similar claims.  Moreover, judicial economy will suffer if court systems throughout the country and throughout Illinois are forced to hear several dozen or hundreds of separate lawsuits, each presenting common factual and legal questions.  The class action procedure will save those resources and will efficiently and uniformly resolve the dispute.  The certification of a class will allow litigation of claims that, in view of the expense of litigation, may be insufficient in amount to support individual actions.

## VI.    Discovery and Proposed Schedule

Plaintiff proposes that all non-expert, class certification discovery in furtherance of certification of the above-identified class be completed by August 1, 2022.

## VII.   Conclusion

For the reasons stated above, Plaintiff has established that all of the elements necessary for class certification, and as provided for in 735 ILCS 5/2-801, *et seq.*, are present in this case. Accordingly, Plaintiff asks that this Court certify the instant matter as a class action.

Plaintiff reserves the right to supplement the pleadings and the record prior to hearing on the motion.

Dated:  July 22, 2021                                    Respectfully submitted,

                                                        */s/ Katrina Carroll*

                                                        Katrina Carroll
                                                        **CARLSON LYNCH LLP**
                                                        Kyle A. Shamberg
                                                        Nicholas R. Lange
                                                        111 W. Washington Street - Suite 1240
                                                        Chicago, IL  60602
                                                        Phone: (312) 750-1265
                                                        Fax: (312) 212-5919
                                                        kcarroll@carlsonlynch.com
                                                        kshamberg@carlsonlynch.com
                                                        nlange@carlsonlynch.com
                                                        Firm ID: 63746

FILED DATE: 7/22/2021 3:55 PM   2021CH03593

Gary F. Lynch*
Kelly K. Iverson*
Jamisen A. Etzel*
Nicholas A. Colella*
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322-9243
Fax: (412) 231-0246
glynch@carlsonlynch.com
kiverson@carlsonlynch.com
jetzel@carlsonlynch.com
ncolella@carlsonlynch.com

Joseph P. Guglielmo
**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Phone: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**

* = pro hac vice forthcoming

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ALEXANDER CLARKE, individually and
on behalf of all others similarly situated,

                 Plaintiff,

v.

LEMONADE INC.,

                 Defendant.

Case No. 2021-CH-03593

Hon. Allen P. Walker

## ORDER

This matter, coming before the Court on Plaintiff's Motion for Class Certification Pursuant to 735 ILCS 5/2-801 *et seq*, the Court, having considered the motion, HEREBY ORDERS:

1) Plaintiff's Motion for Class Certification is entered and continued, and Plaintiff is given leave to revise said motion after discovery; and

2) The previously set case management conference set for November 19, 2021 at 9:30 a.m. stands.

**ENTERED:**

August 2, 2021
Date

Judge Allen P. Walker

Allen Price Walker
Associate Judge

Aug. 2, 2021

Circuit Court - 2071

Dated: August 2, 2021

Katrina Carroll
Kyle A. Shamberg
Nicholas R. Lange
**CARLSON LYNCH LLP**
111 W. Washington Street - Suite 1240 Chicago, IL 60602
Phone: (312) 750-1265

Fax: (312) 212-5919
kcarroll@carlsonlynch.com
kshamberg@carlsonlynch.com
nlange@carlsonlynch.com
Firm ID: 63746

Gary F. Lynch*
Kelly K. Iverson*
Jamisen A. Etzel*
Nicholas A. Colella*
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322-9243
Fax: (412) 231-0246
glynch@carlsonlynch.com
kiverson@carlsonlynch.com
jetzel@carlsonlynch.com
ncolella@carlsonlynch.com

Joseph P. Guglielmo
**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, NY 10169
Phone: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

* = pro hac vice forthcoming